UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Applicant,<br><br>-against-<br><br>BLAINE THE BEAUTY CAREER SCHOOL OF BOSTON, INC. and BLAINE THE BEAUTY CAREER SCHOOL OF FRAMINGHAM, INC., d/b/a BLAINE BEAUTY SCHOOL<br><br>    Respondent. | MBD No.<br><br>05-10173GAO |

**MEMORANDUM IN SUPPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE WHY A SUBPOENA SHOULD NOT BE ENFORCED**

**I. INTRODUCTION**

This case is before the Court on the Application of the Equal Employment Opportunity Commission ("EEOC") for an Order to Show Cause Why a Subpoena Should Not be Enforced. The EEOC is currently investigating a charge of sex discrimination filed by a female employee ("Charging Party") against Respondent, Blaine the Beauty Career School of Boston, Inc. and Blaine the Beauty Career School of Framingham, Inc., d/b/a Blaine Beauty School ("Respondent"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e

1

*et seq.* ("Title VII"). In this charge, Charging Party alleges she was demoted and subsequently terminated in violation of Title VII after she advised her manager that she was pregnant.

As will be described in more detail below, from the moment EEOC began its investigation of this charge, Respondent has engaged in conduct that has threatened the integrity and effectiveness of the EEOC's enforcement and investigation process. This conduct has included dilatory and incomplete responses to requests for information, and the repeated and blatant failure to respond to telephone calls and written correspondence from the EEOC.

After repeated attempts to contact Respondent by telephone and letter to require responses to its requests for information failed, EEOC issued a Subpoena seeking documents and information required for its investigation. In summary, the Subpoena includes requests for: (1) relevant personnel, disciplinary and medical documents for Charging Party and her supervisor; (2) an explanation regarding Charging Party's alleged demotion and the identification of the individuals responsible; (3) an explanation regarding Charging Party's alleged termination and the identification of the individuals responsible; (4) detailed information regarding Charging Party's managerial position from which she was allegedly demoted and documents related thereto; (5) information regarding Respondent's relevant employment policies; (6) a workforce profile that included contact information for all employees during the relevant time period, and (7) the identification of any former or current employees who have been provided pregnancy leave and/or pregnancy related benefits. *See* Decl. of Robert L. Sanders, Area Director, EEOC Boston Area Office ("Dir. Decl."), ¶5u, Ex. 1; EEOC Subpoena, dated February 4, 2005, Dir. Decl., Ex. 1J.

To date, Respondent has failed to fully comply[1] with the EEOC's requests for information and documents, and that refusal has delayed and hampered the investigation of this charge of discrimination, thereby preventing the EEOC from fulfilling its enforcement and investigatory duties. The EEOC therefore applies to this Court to issue an Order to Show Cause Why the Subpoena Should Not be Enforced.

## II. FACTUAL BACKGROUND

On September 2, 2004, Charging Party, Sandra A. Casey, filed a timely charge of discrimination alleging that Respondent discriminated against her on the basis of her sex given that she was allegedly demoted and subsequently terminated because of her pregnancy, about which she had advised her supervisor shortly before both adverse employment events occurred. *See* Dir. Decl. Ex. 1, ¶5a; Charge of Discrimination of Sandra A. Casey, Charge No. 161-2005-00495, Dir. Decl., Exhibit 1A. On September 3, 2004, EEOC Senior Investigator Kenneth Feng An ("Senior Investigator An"), sent Respondent notice of the charge of discrimination.[2] *See* Dir. Decl. Ex. 1, ¶5b; Notice of Charge to Respondent, Dir. Decl., Ex. 1B. This notice to

---

[1] Through its December 17, 2004 submission of the statement of Marc Galgay, has responded in part to the first request and fully to the second and third requests. The remaining requests, however, have remained unfulfilled.

[2] The initial charge of discrimination, the request for Position Statement and the September 28, 2004 letter advising Respondent that it had failed to meet the deadline for the filing of a Position Statement were sent to the mailing address for Respondent provided by Charging Party when she filed her charge of discrimination: 30 West St., Boston, MA 02111. While the 30 West St. address is the address where Charging Party worked and not Respondent's corporate headquarters and/or principal place of business, Respondent has not at any time raised that it did not receive this correspondence as a result. Nonetheless, once Senior Investigator An realized that Respondent's corporate headquarters/principal place of business was in Respondent's Framingham office (624 Worcester Rd. Framingham, MA 01702), he exclusively communicated with that office.

Respondent included a request for a Position Statement from the Company in response to the charge due on September 24, 2004. Id.

Respondent failed to provide the requested Position Statement on September 24, 2004. *See* Dir. Decl. Ex. 1, ¶5d. Respondent also never contacted Senior Investigator An regarding its failure to provide the requested Position Statement. Id. Nonetheless, in a letter dated September 28, 2005, Senior Investigator An, in good faith, advised Respondent he had extended the deadline to provide the Position Statement to October 14, 2005. *See* Dir. Decl. Ex. 1, ¶5e; September 28 Letter, Dir. Decl., Ex. 1D. On October 14, 2004, Respondent again failed to provide the Position Statement and again failed to contact Senior Investigator An regarding it failure to respond. *See* Dir. Decl. Ex. 1, ¶5f.

On October 25, 2005, Senior Investigator An, contacted Respondent's main office in Framingham and learned that a Vicky Jones, Respondent's General Manager/Director of Operations, was the appropriate contact for Respondent on this pending EEOC matter. *See* Dir. Decl. Ex. 1, ¶5g. This being the case, Senior Investigator An left a voice mail message that same day for Ms. Jones regarding the lack of response from Respondent on this matter.[3] Id. Ms. Jones failed to respond. Id. On October 29, 2004, Senior Investigator An contacted Ms. Jones again and left another voice mail message. *See* Dir. Decl. Ex. 1, ¶5h. Again, Ms. Jones failed to respond to Senior Investigator An's voice mail. Id. On that date, Senior Investigator An obtained Respondent's mailing address in Framingham and sent a Request For Information ("RFI") dated November 2, 2004 directly to Respondent's CEO/President. *See* Dir. Decl. Ex. 1,

---

[3]Respondent's Framingham office telephone number is 1-508-370-7447. Ms. Jones' extension is 121.

¶5i; RFI, Dir. Decl., Ex. 1E. The RFI indicated the responses were due on November 20, 2004. Id. Respondent also failed to respond to the EEOC's RFI by the due date, November 20, 2004. See Dir. Decl. Ex. 1, ¶5j.

In an effort to impress upon Respondent the importance of its response to the charge of discrimination and in the hope of preventing the need for the instant application, on December 7, 2004, the undersigned contacted Respondent's Framingham office and confirmed that Ms. Jones was the appropriate contact person for Respondent. See Dir. Decl. Ex. 1, ¶5j. That day, the undersigned left a voice mail message for Ms. Jones regarding the importance of Respondent's response to the EEOC and that if no response was forthcoming that the Commission would be forced to issue a subpoena for the information. Id. Ms. Jones failed to respond. On December 9, 2005 the undersigned called Respondent's Framingham office, spoke to the receptionist at the Framingham office and requested to speak to Jones directly. See Dir. Decl. Ex. 1, ¶5l. The receptionist stated Jones was on her way out and that Jones specifically asked the undersigned to leave contact information on her voice mail and that she [Jones] would return the phone call in the afternoon. Id. As requested, the undersigned left a voice mail message. Nonetheless, Ms. Jones again failed respond. See Dir. Decl. Ex. 1, ¶5m.

On December 15, 2004, Senior Investigator An sent a Pre-Subpoena Letter to Respondent at its Framingham office, directly to Dennis Tarr, Respondent's President/CEO. See Dir. Decl. Ex. 1, ¶5n; Pre-Subpoena Letter, Dir. Decl., Ex. 1F. This letter set forth each and every failure to respond and communicate with the Commission, and once again requested a response to the overdue RFI. While Respondent failed to respond directly to this Pre-Subpoena Letter, Respondent did finally fax a letter (dated November 21, 2004) on December 15, 2004 to Senior

Investigator An, alleging that it was including all the documentation the EEOC had requested. *See* Dir. Decl. Ex. 1, ¶5o; December 17, 2004 Respondent Correspondence, Ex. 1G. With no explanation as to why it had delayed its response for over two months, and without any explanation as to why it had failed to contact the EEOC for over two months, Respondent only sent along: (1) an unsigned statement from Mr. Marc Galgay, Director of Education,[4] and Charging Party's supervisor, and (2) a copy of Ms. Casey's employment file. Id. Respondent also responded to Charging Party's charges in a short cover letter as follows: "[W]e adamantly deny any charges of harassment toward Ms. Casey. In fact, we worked diligently to ensure that she remained an employee of the school; she in fact abandoned her position." Id. No further information was provided.[5]

Given Respondent's insufficient response, the majority of the RFI served by the EEOC went unfulfilled. *See* RFI, Dir. Decl. Ex. 1, ¶5o. Given the incomplete response to the RFI, Senior Investigator An sent Ms. Jones a letter requesting a full and detailed response to the Nov. 2, 2004 RFI and gave Respondent until December 31, 2004 to respond. *See* Dir. Decl. Ex. 1, ¶5p; December 17, 2004 Letter, Ex.1H. However, once again, on December 31, 2004 Respondent failed to respond. *See* Dir. Decl. Ex. 1, ¶5q. As a result, Sr. Investigator An again contacted Ms. Jones by letter dated January 4, 2005 advising her of his final request to comply with the RFI dated November 2, 2004. *See* Dir. Decl. Ex. 1, ¶5r; January 4, 2005 Letter, Dir.

---

[4] Respondent indicates in its cover letter that it also included a statement from Ms. Julie Karz, School Manager, but this was in fact not included in its submission.

[5] Respondent's Position Statement simply sets forth Marc Galgay's (unattested) position on Charging Party's claims and provides the Charging Party's employment file. This information only satisfies a minor part of the EEOC's RFI (half of Request No. 1 and arguably a response to Request No.2). Respondent has otherwise failed to respond to the EEOC's RFI.

Decl., Ex. 1I. He followed this letter up with a phone call to Ms. Jones on January 5, 2005, and let her know that if there was no response by January 20, 2005 a Subpoena would be issued. See Dir. Decl. Ex. 1, ¶5s.

Having received no response by telephone or letter from Respondent, the Director of the New York District Office, Spencer H. Lewis[6], issued and served a Subpoena upon Respondent on February 4, 2005 *via* certified mail.[7] See Dir. Decl. Ex. 1, ¶¶5t, u; Subpoena, Dir. Decl., Ex. 1J. This Subpoena required production of the information and documents requested in the EEOC's initial RFI dated November 2, 2004, and required it be produced by or on before 3 p.m. February 18, 2005.[8] Id.

On February 23, 2005, the undersigned sent a letter to Ms. Jones advising her that Respondent's response to the Subpoena was past due, and advised Respondent that failure to comply with the Subpoena by March 10, 2005, would lead to Subpoena-enforcement proceedings by the EEOC. See Dir. Decl. Ex. 1, ¶5v; February 23, 2005 Letter, Dir. Decl., Ex. 1K. To date, Respondent has failed to comply fully with the Subpoena. See Dir. Decl. Ex. 1, ¶6.

---

[6] The Boston Area Office, that processed the charge at issue, is part of the New York District Office.

[7] Due to administrative error, the "Directions" attached to the Subpoena included erroneous information in ¶¶8, 14, 15, 16 and 20. A revised copy of the Directions to the Subpoena were sent in substitution to Respondent on April 13, 2005. See Dir. Decl. Ex. 1, ¶5w; Revised Subpoena Directions, Dir. Decl., Ex. 1L. Given the administrative error, the original directions to the Subpoena have been filed redacted to protect confidential information.

[8] The Subpoena was accompanied by a cover letter by the undersigned.

## III. ARGUMENT

A.   **Respondent Failed to Exhaust its Administrative Remedies and Therefore has Waived its Right to Challenge the Subpoena**

Respondent did not exhaust its administrative remedies and therefore has waived all objections to enforcement of the Subpoena. Pursuant to 29 U.S.C. §161[9] and 29 C.F.R. §1601.16(b), any recipient of an EEOC subpoena who does not intend to comply must petition the EEOC to revoke or modify the subpoena within five days of service of the subpoena. "A party's failure to attempt this administrative appeal procedure prevents the party from challenging the subpoena, except on constitutional grounds." EEOC v. County of Hennepin, 623 F.Supp. 29, 31-32 (D. Minn. 1985). *See also* EEOC v. Cuzzens of Georgia, 608 F.2d 1062, 1063-64 (5th Cir. 1979)(*per curiam*); EEOC v. Roadway Express, 569 F. Supp. 1526, 1528-29 (N.D. Ind. 1983); EEOC v. City of Milwaukee, 919 F. Supp. 1247, 1255 (D. Wisc., 1996) *citing* EEOC v. Temple Steel Co., 814 F.2d 482, 485 (7th Cir. 1987).

Respondent did not petition the EEOC to revoke or modify the subpoena within five days, as required by the statute and the related regulations. Indeed, Respondent never so petitioned. Dir. Decl., Ex. 1, ¶7. Consequently, all Respondent's objections to enforcement of the EEOC Subpoena, other than constitutional objections, have been waived. Because Respondent has not, and cannot, raise any constitutional objections, the Subpoena must be enforced.

B.   **Independent of Respondent's Waiver of its Objections, it has No Valid Defenses for Failing to Comply with the EEOC's Subpoena**

Even if Respondent had any objections to be considered, it has no valid defenses for failing to fully comply with the EEOC's Subpoena. Administrative subpoena enforcement

---

[9]This section is incorporated into Title VII by §710, 42 U.S.C. §2000e-9.

proceedings in federal court are summary in nature and involve only limited judicial review. EEOC v. Maryland Cup Corp., 785 F.2d 471, 475 (4th Cir. 1986), *cert. denied,* 479 U.S. 815 (1986); EEOC v. Peat, Marwick, Mitchell & Co., 775 F.2d 928, 930 (8th Cir. 1985), *cert. denied,* 475 U.S. 1046 (1986). To successfully petition a court to enforce an administrative subpoena, the Commission need only show: 1) that the subpoena is within the agency's authority; 2) that the agency has satisfied its own procedural (due process) requirements; and, 3) that the information sought is relevant to its investigation. EEOC v. University of New Mexico, 504 F.2d 1296, 1302 (10th Cir. 1974); EEOC v. Children's Hospital Medical Center, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*); EEOC v. Peat, Marwick, Mitchell & Co., 775 F.2d 928, 930 (8th Cir. 1985), *cert. denied,* 475 U.S. 1046 (1986); EEOC v. Maryland Cup Corp., 785 F.2d 471, 475 (4th Cir. 1986), *cert. denied,* 479 U.S. 815 (1986); EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th Cir. 1991); EEOC v. American & Efird Mills, 964 F.2d 300, 302-303 (4th Cir. 1992). Once this showing has been made by the EEOC, the court must enforce the subpoena unless the party being investigated can prove that the subpoena is unduly burdensome. *E.g.*, EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981); EEOC v. Children's Hospital Medical Center, 719 F.2d at 1428 (9th Cir. 1983)(*en banc)*; EEOC v. Ocean City Police Dept., 787 F.2d 955, 957 (4th Cir. 1986). As the following discussion illustrates, Respondent has no basis for challenging the validity of the Subpoena, and therefore, the Subpoena should be enforced.

**1. The subpoena is valid and within the Agency's authority**

First, Congress has authorized, and indeed mandated, that the EEOC investigate charges of discrimination alleging that Title VII has been violated. 42 U.S.C. §2000e-5(b). The EEOC is investigating Charging Party's charge that Respondent engaged in sex discrimination in violation

of Title VII when it allegedly demoted and terminated her because of her pregnancy. Congress conferred broad powers upon the Commission in furtherance of its investigatory responsibilities, granting the EEOC the right to obtain access to records of those entities against whom charges have been filed; the EEOC is authorized to subpoena any information "that relates to any matter under investigation or in question." 29 U.S.C. §161 (incorporated into Title VII, 42 U.S.C. §2000e *et seq.*, by § 710, 42 U.S.C. § 2000e-9); *see* §709(e) of Title VII, 42 U.S.C. §2000e-8(a). This investigation seeks to determine if Respondent has engaged in sex discrimination related to the Charging Party's pregnancy. This investigation is within the Agency's statutory authority and as will be described more fully below, the EEOC's RFI is relevant and reasonable given its mandate to investigate the pending charge of discrimination. Thus, the first prong of the test has been satisfied.

### 2. All procedural prerequisites have been fulfilled

The EEOC has complied with all procedural requirements underlying the Subpoena. A valid charge[10] has been filed and the Subpoena contains all the information required by the EEOC's regulations. 29 C.F.R. § 1601.16(a) states, in relevant part:

> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested. A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

29 C.F.R. §1601.16. The Subpoena states specifically that it has been issued by Spencer H. Lewis, Director of the New York District Office of the EEOC, identifies the information to be produced and states that information will be due February 18, 2005 at the Boston Area Office of

---

[10] 29 C.F.R. § 1601.12 (setting forth requirements of valid charge)

the EEOC and gives the name of Senior Investigator An as a contact person for the EEOC. Respondent does not, and could not, allege that these basic requirements have not been met. Thus, the second prong of the test has been satisfied.

### 3. The information sought is relevant

Finally, the information sought by the Subpoena is relevant to the issues under investigation. The concept of relevancy during an EEOC investigation is much broader than is that concept during litigation. Section 709(a) states the EEOC's right to information in broad terms, granting EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The Commission is uniformly afforded access to "virtually any material that might cast light on the allegations" against the employer. See Motorola v. McLain, 484 F.2d 1339, 1342 (7th Cir. 1973), cert. denied, 416 U.S. 936 (1974). See also EEOC v. Morgan Stanley, 1999 U.S. Dist. LEXIS 14661, *4 (SDNY 1999). Ex. 2.

In the RFI, EEOC makes seven requests - each which is relevant and reasonable, and therefore fulfilling the third prong of the test. Taking each request in the November 2, 2004 RFI that were not complied[11] with *seriatum*, it should become evident that the EEOC's RFI is relevant and reasonable given the charge before it in investigation.[12]

### a.   *The Court Should Fully Enforce Request No.1*

EEOC's first request asks Respondent to: "Provide all documents maintained/kept by

---

[11]As discussed *supra* in n. 1 and 5, EEOC accepts Respondent's Position Statement responds partially to Request No. 1, and fully to Requests Nos. 2 and 3.

[12]It is of note that this was the *first* RFI served in this case. Normally the EEOC sends more than one RFI out and expects this to be the case in its investigation of this matter.

Blaine Beauty School (hereinafter referred to as Respondent) for Sandra Casey (hereinafter referred to as Charging Party) and Marc Galgay. This should include but (sic) not limited to documents in the personnel, disciplinary and medical files." This request was partially satisfied by Respondent when it supplied Charging Party's personnel file. However, Respondent never provided her supervisor, Marc Galgay's, personnel file as requested. EEOC made the request for Mr. Galgay's personnel files because Mr. Galgay was alleged to be the person responsible for making the adverse employment actions against Charging Party.

Mr. Galgay's personnel file is important given that review of a supervisor's file often will provide relevant information to assist the EEOC in determining relevant information like whether he had been previously warned or reprimanded for similar discriminatory conduct or whether he had received anti-discrimination training or counseling. Because review of Mr. Galgay's personnel file as a member of management allegedly making the adverse decisions against Charging Party is relevant to the investigation of this charge, the Court should require Respondent to produce this information.

        **b.**    *The Court Should Enforce Request No. 4*

EEOC's fourth request is for detailed information regarding Charging Party's position as Assistant Director. Specifically, EEOC requested details regarding: (1) who replaced Charging Party after she was demoted; (2) whether the position was posted and if so, asked Respondent to provide a copy of the job advertisement/posting that was circulated; (3) who was interviewed, the dates of those interviews, and the name of the individual who conducted the interviews and, (4) the identification of the individual who made the decision to hire a new Assistant Director. This request also asked for documentation relating to the person hired to replace Charging Party as

Assistant Director including personnel, disciplinary and medical files.

This request is reasonable and relevant given Charging Party's claim that she was demoted because of her pregnancy. A review of the process undertaken to fill her position and to determine the background of the person who was hired to her position is crucial to the investigation of this matter. For example, if the person who was selected was also a pregnant woman, this would allow the EEOC to determine that discrimination was less likely; similarly if Charging Party's replacement was tainted with evidence that Respondent did not want a pregnant female in the position, this would also assist the investigation. However, in the absence of any information - the EEOC cannot proceed. Therefore the EEOC respectfully requests the Court require Respondent to produce this information.

  c.  ***The Court Should Enforce Request No. 5***

The EEOC's fifth request is for copies of Respondent's written policies, or a detailed explanation of the actual practice in the absence of a written policies, related to hiring, demotion, pregnancy leaves, termination and pregnancy related benefits/accommodations. The EEOC asked for these policies in effect from January 1, 2003 through present. Not only is a request for this type of policy information germane to Charging Party's claims, and the EEOC's understanding of how the Company responds to matters related to Charging Party's claims, the time period of the request is far from burdensome. In that regard, the EEOC respectfully request the Court require production of these policies.

  d.  ***The Court Should Enforce Request No. 6***

The sixth request is for a workforce profile of all employees employed by Respondent from January 1, 2002 to the present, with each individual identified by name, gender, date of

hire, job position(s) held, residential telephone number and address, and current employment status (employed or separated with date and reason for the separation). Such a compilation is a typical request by the EEOC and has been held by Courts to be acceptable. *See* <u>Motorola v. McLain</u>, 484 F.2d 1339, 1346 (7th Cir. 1973) ("There is nothing unique about a requirement to compile and furnish lists, names, addresses and telephone numbers"), *cert. denied*, 416 U.S. 936 (1973), *citing* <u>Local No. 194, Sheet Metal Workers v. EEOC</u>, 439 F.2d 237, 243 (9th Cir. 1971); <u>EEOC v. Maryland Cup Corp.</u>, 785 F.2d 471, 478 (4th Cir. 1986), *cert. denied*, 479 U.S. 815 (1986)("The subpoena power of the EEOC is not limited to the production of documents already in existence"), *cert. denied*, 479 U.S. 815 (1986); <u>EEOC v. Citicorp Diners Club</u>, 985 F.2d 1036, 1039 (10th Cir. 1993) (EEOC may compel employer to compile summaries by examining personnel files and interviewing witnesses).

This requested information would provide the EEOC with access to the contact information for potential witnesses to the charge of discrimination and allow it to, at minimum determine whether there are any discriminatory patterns in terminations; for example, of releasing pregnant employees - or the opposite, that pregnant employees are frequently given leave and allowed to return to work. This request is reasonable and relevant to the pending charge, and should therefore be granted.

   *e.*  ***The Court Should Enforce Request No. 7***

EEOC's seventh and final request asked Respondent to provide any of its past or present employees with pregnancy leave and pregnancy related benefits, and if so, to provide the name of the employee who received such leave and/or benefit, and a detailed explanation on the nature and duration of the benefit. It cannot be gainsaid that this information is critical to determining

Respondent's historical response to pregnant employees. Because this request is also relevant and reasonable, we ask the Court to require its production.

It is undeniable that all of the requested information "might cast light on the allegations" made by Charging Party. It is also undeniable that this initial RFI which only includes seven narrowly tailored requests is far from unduly burdensome and is in fact, reasonable. Charging Party alleges that she was discriminated against on the basis of her sex given that she alleges she was demoted and subsequently terminated shortly after telling her supervisor that she was pregnant. In order to investigate these allegations EEOC seeks all of the above information and documents relevant to Charging Party's allegations and Respondent's possible defenses.

### 4. Compliance With the Subpoena Does Not Impose an Undue Burden on Respondent

A court will not excuse compliance with a subpoena for relevant information on the grounds of burdensomeness unless the Respondent establishes that "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." EEOC v. Maryland Cup Corp., 785 F.2d 471, 479 (4th Cir. 1986), *cert. denied*, 479 U.S. 815 (1986). *See also* EEOC v. Citicorp Diners Club, 985 F.2d 1036, 1040 (10th Cir. 1993). In addition, the cost of compliance with a subpoena is "unduly burdensome in light of the company's normal operating costs," the district court should enforce the subpoena. EEOC v. Maryland Cup Corp., 785 F.2d at 479.

Respondent has not raised any argument that responding to the Subpoena is burdensome. Even assuming, *arguendo*, that it should make such an argument, at best, Respondent can show that compliance with the subpoena will involve some minimal inconvenience and some minor cost. Respondent has the burden of establishing that compliance would entail an unreasonable

burden, and it will be unable to do so. EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981); EEOC v. Citicorp Diners Club, 985 F.2d 1036, 1040 (10th Cir. 1993); EEOC v. United Airlines, 287 F.3d 643, 653 (7th Cir. 2002) *citing* FTC v. Standard American, 306 F.2d 231, 235 (3rd Cir. 1962). Therefore, Respondent should be required to comply with the EEOC Subpoena.

### IV. CONCLUSION

For the foregoing reasons, this Court should enforce the EEOC's Subpoena. The Subpoena seeks information relevant to a valid charge of discrimination that is within the EEOC's enforcement authority. Further, Respondent has not established that complying with the Subpoena would be unduly burdensome. The EEOC therefore urges the Court to issue the accompanying proposed Order to Show Cause, and, after giving Respondent an opportunity to be heard, enforce the Subpoena.

Dated: April 15, 2005  
       Boston, Massachusetts

Respectfully submitted,

Elizabeth Grossman  
Acting Regional Attorney  
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION  
New York District Office  
33 Whitehall, 5th Floor  
New York, NY 10004-2112  
Tel: (212) 336-3696; Fax: (212) 336-3623  
Elizabeth.Grossman@eeoc.gov

_____  
R. Liliana Palacios  
Senior Trial Attorney (MA BBO 640786)  
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION  
Boston Area Office  
John F. Kennedy Federal Building,  
Room 475  
Boston, MA 02203-0506  
(617) 565-4804  
Rosa.Palacios@eeoc.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on Respondent's General Manager/Director of Operations, Vicky Jones, 624 Worcester Rd., Framingham, MA 01702 by U.S. Mail, postage prepaid, on April 15, 2005.

Dated: April 15, 2005

_____  
R. Liliana Palacios  
Senior Trial Attorney

17